IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JPMORGAN CHASE BANK, N.A.,      §
                                §
          Plaintiff,            §
                                §
v.                              §   CIVIL ACTION NO. H-10-1358
                                §
CLASSIC HOME FINANCIAL, INC.,   §
                                §
          Defendant.            §

**<u>MEMORANDUM OPINION</u>**

Pending before the court are Plaintiff's Motion for Summary Judgment (Doc. 30), supplemented by Plaintiff's Supplemental Motion for Summary Judgment (Doc. 48), and Plaintiff's Motion to Strike Defendant's Jury Demand (Doc. 33).[1]  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for summary judgment and **GRANTS IN PART** Plaintiff's motion to strike.

### I.  Case Background

Plaintiff filed the present action against Defendant alleging a breach of the contract entered into by the parties for the sale and transfer of residential mortgage loans.  Specifically, Plaintiff contends that Defendant breached the contract by: (1) violating warranties, representations, and covenants regarding the mortgages at issue; and (2) failing to indemnify Plaintiff pursuant

---

[1]      The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Doc.50.

to the contract's indemnity provision. Plaintiff seeks to recover actual damages and attorneys' fees and costs. Plaintiff also seeks specific performance of the terms of the Agreement.

## A.  Factual History

On September 6, 2006, Plaintiff and Defendant executed a Correspondent Origination and Sales Agreement ("Agreement") for the "origination, sale, and transfer of conventional, FHA or VA residential mortgage loans."[2]   The Agreement incorporated by reference a Correspondent Lending Guide ("Lending Guide").[3]   The parties also entered into a Third Party Origination Rider ("Rider") and a Delegated Underwriting Addendum ("Underwriting Addendum"), both of which supplemented the Agreement.[4]

Under the Agreement, Defendant represented that all of the loans purchased by Plaintiff were originated by Defendant, insurable by private insurers, and devoid of attendant costs related to creating, closing, or recording the loans.[5] Defendant further warranted that it had made no material misrepresentations regarding the loans and that the documents prepared pursuant to the

---

[2]    Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J., Corr. Orig. and Sales Agreement.

[3]    See Doc. 30-1, Ex. A-2 to Pl.'s Mot. for Summ. J., Corr. Lend. Guide.

[4]    Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J., 3rd Party Orig. Rider. & Delegated Underwriting Add.

[5]    See generally Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J., Corr. Orig. and Sales Agreement, Art. IV, § 4.2.

Agreement were "genuine, accurate, and complete."[6]  An unremedied breach of these warranties and representations obligated Defendant, at Plaintiff's request, to repurchase the defective loans.[7] Defendant also contracted to indemnify Plaintiff for the "breach of any representation or warranty, covenant or agreement made by [Defendant]."[8]

With respect to defects in the loans, the Agreement required that Defendant return servicing release premiums ("SRPs"), as well as pay penalties and/or over-par amounts, to Plaintiff for the early payoffs ("EPO") or early payoff defaults ("EPD") on any given loan.[9]  The Agreement also contained a provision waiving both parties' right to a jury trial for any action arising from the Agreement.[10]

Plaintiff purchased a number of mortgage loans under the Agreement, seven of which, Plaintiff claims, have defects obligating Defendant to compensate Plaintiff.[11]  According to

---

[6]    Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J., Corr. Orig. and Sales Agreement, Art. IV, § 4.2(O); see Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J., Corr. Orig. and Sales Agreement, Art. IV, §§ 4.2(L), 4.2(V).

[7]    See Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J., Corr. Orig. and Sales Agreement, Art. V, § 5.1.

[8]    See Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J., Corr. Orig. and Sales Agreement, Art. V, § 5.4.

[9]    See Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J., Corr. Orig. and Sales Agreement, Art. V, § 5.5.

[10]    See Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J., Corr. Orig. and Sales Agreement, Art. VII, § 7.8.

[11]    See Doc. 15, Pl.'s 1st Am. Compl., pp. 2-3.

3

Plaintiff, the loans at issue are subject to compensation under different provisions of the Agreement: two loans are EPOs ("Loan A" and "Loan B"); two loans are EPDs ("Loan C" and "Loan D"); one loan is uninsurable by private insurers and contains fraudulent information ("Loan E"); another loan includes asset misrepresentation and lacks documentation ("Loan F"); and the final loan was burdened by a tax penalty when Defendant sold it to Plaintiff ("Loan G").[12]   Plaintiff requested compensation from Defendant for Loans A through G.[13]   Because Defendant did not compensate Plaintiff for any of the aforementioned loans, Plaintiff filed this breach-of-contract action.[14]

## B.   Procedural History

Plaintiff initiated this lawsuit against Defendant on April 23, 2010.[15]   On August 13, 2010, Defendant answered the complaint and requested a jury trial.[16]   Plaintiff filed its first amended complaint on September 10, 2010, which Defendant answered on

---

[12]   See Doc. 30, Pl.'s Mot. for Summ. J., p. 1.

[13]   See Doc. 30-1, Ex. A-3 to Pl.'s Mot. for Summ. J., Dem. Letter & Loan Info. Inquiries for Loans A & B; Doc. 30-1, Ex. A-4 to to Pl.'s Mot. for Summ. J., Dem. Letter & Loan Info. Inquiry for Loan C; Doc. 30-1, Ex. A-5 to Pl.'s Mot. for Summ. J., Dem. Letter & Loan Info. Sheet for Loan D; Doc. 30-1, Exs. A-6, A-7, A-8, & A-10 to Pl.'s Mot. for Summ. J., Letters re: Loan E; Doc. 30-1, Ex. A-13 to Pl.'s Mot. for Summ. J., Dem. Letter for Loan F; Doc. 30-1, Ex. A-14 to Pl.'s Mot. for Summ. J., Dem. Letter for Loan G.

[14]   See Doc. 15, Pl.'s 1st Am. Compl., p.3.

[15]   See Doc. 1, Pl.'s Orig. Compl.

[16]   See Doc. 7, Def.'s Orig. Ans. with Jury Dem.

October 4, 2010, again incorporating a request for a jury trial.[17]

Plaintiff filed the pending motion for summary judgment approximately seven months later, on April 29, 2011.[18]  About one week later, on May 6, 2011, the court extended Defendant's deadline to respond to Plaintiff's motion to June 3, 2011.[19]  Plaintiff filed the pending motion to strike Defendant's jury demand on May 13, 2011, to which Defendant responded on June 2, 2011.[20]  On the following day, Defendant filed its response to Plaintiff's summary judgment motion.[21]

On July 26, 2011, and October 5, 2011, respectively, the parties submitted agreed motions to extend the deadline for filing dispositive motions.[22]  The court granted both motions, ultimately extending the deadline to October 21, 2011.[23]  On that date, Plaintiff filed the pending supplemental motion for summary judgment, which offered additional evidence obtained by the parties

---

[17]      See Doc. 15, Pl.'s 1st Am. Compl.; Doc. 19, Def.'s Resp. to Pl.'s 1st Am. Compl.

[18]      See Doc. 30, Pl.'s Mot. for Summ. J.

[19]      See Doc. 32, Or. Granting Def.'s Unopp. Mot. for Extension of Time to Respond to Pl.'s Mot. for Summ. J.; Doc. 31, Def.'s Unopp. Mot. for Extension of Time to Respond to Pl.'s Mot. for Summ. J.

[20]      See Doc. 33, Pl.'s Mot. to Strike Def.'s Jury Dem.; Doc. 35, Def.'s Resp. to Pl.'s Mot. to Strike.

[21]      See Doc. 38, Def.'s Resp. to Pl.'s Mot. for Summ. J.

[22]      See Doc.44, 1st Agr. Mot. for Extension of Time to File Dispositive Mots.; Doc. 46, 2nd Agr. Mot. for Extension of Time to File Dispositive Mots.

[23]      See Doc. 45, Or. Granting 1st Agr. Mot. for Extension of Time to file Dispositive Mots. (extending deadline to Oct. 10, 2011); Doc. 47, Or. Granting 2nd Extension of Time to File Dispositive Mots. (extending deadline to Oct. 21, 2011).

subsequent to Plaintiff's filing of its original motion for summary judgment.[24]  Defendant responded to Plaintiff's supplemental motion on November 11, 2011.[25]

## II.  Plaintiff's Motion to Strike Jury Demand

Before turning to the merits of Plaintiff's summary judgment motions, the court addresses Plaintiff's motion to strike Defendant's jury demand.

The United States Constitution affords every civil litigant the right to a jury trial.  U.S. Const. Amend. VII.  As with other personal constitutional rights, the right to a jury trial is subject to waiver.  See Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 849 (1986) (citing Fed. R. Civ. P. 38(d)).  Whether a federal constitutional right has been waived is determined according to federal law.  Brookhart v. Janis, 384 U.S. 1, 4 (1966).  Although a presumption lies against waiver, that presumption may be overcome by clear evidence of "an intentional relinquishment or abandonment of a known right or privilege."  Id. (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).  A party may waive its right to a jury trial by several methods, including the acceptance of waiver as a contract term, provided that the relinquishment is knowing and voluntary.  Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc., 56 F. Supp.2d 694, 706 (E.D.

---

[24]     See Doc. 48, Pl.'s Supp. Mot. for Summ. J.

[25]     See Doc. 49, Def.'s Supp. Resp. to Pl.'s Supp. Mot. for Summ. J.

La. 1999)(citing <u>D.H. Overmyer Co. of Ohio v. Frick Co.</u>, 405 U.S. 174 (1972) and <u>Brookhart</u>, 384 U.S. at 4, 5); <u>see also</u> <u>Telum, Inc. v. E.F. Hutton Credit Corp.</u>, 859 F.2d 835, 837 (10th Cir. 1988), <u>cert. denied</u>, 490 U.S. 1021 (1989); <u>Leasing Serv. Corp. v. Crane</u>, 804 F.2d 828, 832 (4th Cir. 1986); <u>K.M.C. Co. v. Irving Trust Co.</u>, 757 F.2d 752, 755 (6th Cir. 1985); <u>Nat'l Equip. Rental, Ltd. v. Hendrix</u>, 565 F.2d 255, 258 (2d Cir. 1977); <u>N.W. Airlines, Inc. v. Air Line Pilots Ass'n Int'l</u>, 373 F.2d 136, 142 (8th Cir. 1967).

No Fifth Circuit case lists what factors should be considered in determining whether a waiver of the right to a jury trial is knowing and voluntary.  However, most courts consider: 1) whether the contract was negotiable; 2) whether the provision was conspicuous; 3) whether a gross disparity in the parties' respective bargaining power existed; 4) whether the waiving party was represented by counsel; and 5) whether the waiving party possessed equal business sophistication.  <u>Westside-Marrero Jeep Eagle, Inc.</u>, 56 F. Supp.2d at 707; <u>see</u> <u>Fuentes v. Shevin</u>, 407 U.S. 67, 95 (1972); <u>D.H. Overmyer Co.</u>, 405 U.S. at 186-87; <u>Telum, Inc.</u>, 859 F.2d at 837; <u>Leasing Serv. Corp.</u>, 804 F.2d at 833; <u>Nat'l Equip. Rental, Ltd.</u>, 565 F.2d at 258; <u>RDO Fin. Servs. Co. v. Powell</u>, 191 F. Supp.2d 811, 813-14 (N.D. Tex. 2002).

Here, Plaintiff contends that each of the factors favor waiver.  Defendant points to the inconspicuousness of the waiver and the lack of negotiability and equal bargaining power as

evidence that no knowing and voluntary waiver occurred.

Although the court finds that the terms of the agreement may have been subject to limited negotiability, the court agrees with Plaintiff that the facts of this case support a finding of knowing and voluntary waiver.  The jury waiver is located in a short paragraph on the thirtieth page of thirty-five-page document under a section entitled "Governing Law," and states: "THE PARTIES WAIVE THEIR RIGHTS TO A JURY TRIAL IN ANY ACTION UNDER THIS AGREEMENT."[26] Located at the end of a short paragraph and the sole statement in the Agreement written in capitalized letters, the waiver is sufficiently conspicuous.  See e.g., Pellerin Const., Inc. v. Witco Corp., 2001 WL 258056 (E.D. La. Mar. 14, 2001) (finding that a jury waiver located in an independent article within a voluminous contract and written in the same type as the other provisions was conspicuous).

With respect to the parties' respective bargaining power, Defendant was a for-profit business engaged in mortgage lending across four states when it contracted with Plaintiff.[27]  That Plaintiff has more assets, offices of operation, employees, and consumers does not amount to a gross disparity in bargaining power,

---

[26]     Doc. 33-1, Ex. A-1 to Pl.'s Mot. to Strike Def.'s Jury Dem., Corr. Orig. and Sales Agreement, p. 30.  The court notes that the Agreement in the record begins at page fifteen and ends at page thirty-five.  See id. at pp. 15-35.

[27]     See Doc. 33-1, Ex. C to Pl.'s Mot. to Strike Def.'s Jury Dem., Pl.'s Cert. of Form.; Doc. 33-1, Ex. E to Pl.'s Mot. to Strike Def.'s Jury Dem., Corr. App., p. JPMC-00832.

particularly in light of Defendant's business sophistication.[28] Defendant's signatory to the Agreement and executive vice president, Mylena Evans,[29] had over twenty-five years of experience in the mortgage-lending industry.[30]  Moreover, Defendant admitted that it read the Agreement in its entirety and had the opportunity to have legal counsel review the Agreement prior to its execution, although it opted not to do so.[31]  Given Evans's expertise and experience in the mortgage loan industry, Defendant had sufficient business sophistication to appreciate the significance of the jury waiver.  That Defendant had only a "limited outlet" for selling its loans does not alter the court's conclusion that the Defendant's waiver of its right to a jury trial was knowing and voluntary.[32] The court therefore **GRANTS** Plaintiff's motion to strike Defendant's jury demand.

### III.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the

---

[28]    See Doc. 35, Def.'s Resp. to Pl.'s Mot. to Strike Def.'s Jury Dem., p. 3.

[29]    The record indicates that Mylena Evans has since changed her name to Mylena Alred ("Alred").

[30]    See Doc. 29, Def.'s Exp. List; Doc. 33-1, Ex. F to Pl.'s Mot. to Strike Def.'s Jury Dem., Resume of Mylena Evans.

[31]    See Doc. 33-1, Ex. B to Pl.'s Mot. to Strike Def.'s Jury Dem., Def.'s Resp. to Pl.'s Req. for Admissions, Nos. 9-10.

[32]    Doc. 35, Def.'s Resp. to Pl.'s Mot. to Strike Def.'s Jury Dem., p. 5.

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case,

demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts."  Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.


## IV.  Analysis

Plaintiff moves for summary judgment on the grounds that Defendant breached the Agreement by failing to compensate Plaintiff for Loans A through G in accordance with various provisions under the Agreement, thus causing actual damages in an amount exceeding $400,000.00.[33] In support of its motion, Plaintiff offers summary judgment evidence in the form of declaration testimony, with attached exhibits, from Cynthia A. O'Malley, a vice president of Plaintiff.[34] Defendant contends that Plaintiff has failed to produce competent summary judgment evidence to establish that Defendant breached the Agreement for any of the loans at issue. The court considers the merits of the arguments.

## A.    <u>Declarations of Cynthia A. O'Malley</u>

Defendant objects to the court's consideration of O'Malley's declarations, and the exhibits attached thereto, as competent summary judgment evidence. Defendant argues that O'Malley lacks personal knowledge of the matters contained in her declaration, as well as personal knowledge satisfying the document predicates under Federal Rules of Evidence 803(6) and 902(11) ("Rule 803(6)" and "Rule 902(11)").

In order to serve as competent summary judgment evidence, an

---

[33]    <u>See</u> Doc. 48-1, Ex. A to Pl.'s Supp. Mot. for Summ. J., Cynthia O'Malley Aff. (claiming updated actual damages of $403,784.82); <u>see also</u> Doc. 30-1, Ex. A to Pl.'s Mot. for Summ. J., Cynthia O'Malley Aff. (claiming $482,561.48 in actual damages from Def.).

[34]    <u>See</u> Doc. 30-1, Ex. A to Pl.'s Mot. for Summ. J., Cynthia O'Malley Decl. & Exs.; Doc. 48, Ex. A to Pl.'s Supp. Mot. for Summ. J., Cynthia O'Malley Supp. Decl. & Exs.

affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e); see also 28 U.S.C. § 1746. Under the hearsay exception of Rule 803(6), personal knowledge is also a prerequisite to the admission into evidence of records of a regularly conducted activity. Specifically, the court must determine whether: (1) the record was made at or near the time by, or from information transmitted by, a person with knowledge; (2) the record was kept in the course of a regularly conducted business activity, and (3) making the record was a regular practice of the business activity. United States v. Ned, 637 F.3d 562, 569 (5th Cir. 2011); Fed. R. Evid. 803(6)(A)-(C). These conditions must be established by "the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) . . . ." Fed. R. Evid. 803(6)(D). Rule 902(11) provides for the authentication of business records that meet the requirements of Rule 803(6)(A)-(C), as certified by a custodian or other qualified witness. Fed. R. Evid. 902(11).

In her declaration, O'Malley avers that she is a vice president of Plaintiff and, as part of that employment, is familiar with the Agreement, Rider, Lending Guide, and Underwriting Addendum

relevant to the loans in issue.[35]   In June 2009, she approved the application of a retainer against defaulted loans, several of which are at issue in the present case.[36]   Her declaration satisfies the foundational bases of Rule 803(6) and 902(11).   With two exceptions, which the court will discuss in more detail below, the exhibits attached to her declarations are properly authenticated and will be considered by the court.

## B.   Defendant's Failure to Compensate Plaintiff for Loan A through Loan G

A breach of contract claim requires proof that: 1) a valid contract exists; 2) the plaintiff fully performed his obligations; 3) the defendant breached the contract; and 4) the plaintiff was damaged as a result of the breach.   Hovorka v. Cmty. Health Sys., Inc., 262 S.W.3d 503, 508-09 (Tex. App.--El Paso 2008, no pet.).   The parties do not contest the existence of a valid contract or that Plaintiff performed its obligations under the contact.   The parties disagree, however, about whether the contract was breached and about the extent of damages.   The court evaluates the arguments for each of the loans at issue.

### 1.   Loans A and B

The Lending Guide, incorporated by reference into the

---

[35]      Doc. 30-1, Ex. A to Pl.'s Mot. for Summ. J., Cynthia O'Malley Decl., ¶¶ 2-3; see Doc. 48-1, Ex. A to Pl.'s Supp. Mot. for Summ. J., Cynthia O'Malley Supp. Decl., ¶ 2.

[36]      See Doc. 48-1, Ex. A to Pl.'s Supp. Mot. for Summ. J., Cynthia O'Malley Supp. Decl., ¶ 5.

Agreement, addresses Defendant's responsibilities in the event of a loan's early payoff.[37]   Specifically, "if a loan purchased by [Plaintiff] is paid in full within 90 days of [Plaintiff's] purchasing the loan, the Correspondent [Defendant] will be responsible for repayment to [Plaintiff]" in the amount of the SRP plus any over-par amount for loans paid off within one to sixty days of funding, or solely the SRP for loans paid off within sixty-one to ninety days of funding.[38]

Plaintiff contends that because Loan A was paid in full approximately sixty-six days after its funding date, Defendant must compensate Plaintiff in the amount of $4,123.49, the SRP for Loan A.[39]  Because Loan B was paid in full approximately fifty-seven days after its funding date, Plaintiff similarly argues that Defendant is obligated under the terms of the Lending Guide to repay $2,223.86, the SRP for Loan B.[40]   In support of these claims, Plaintiff offers O'Malley's original declaration, as well as compensation requests sent to Defendant with an attached "Loan

---

[37]     See Doc. 30-1, Ex. A-2 to Pl.'s Mot. for Summ. J., Corr. Lending Guide.

[38]     Id.

[39]     See Doc. 30-1, Ex. A to Pl.'s Mot. for Summ. J., Cynthia O'Malley Decl., ¶ 6; see also Doc. 30-1, Ex. A-2 to Pl.'s Mot. for Summ. J., Corr. Lending Guide.

[40]     See Doc. 30-1, Ex. A to Pl.'s Mot. for Summ. J., Cynthia O'Malley Decl., ¶ 7; see also Doc. 30-1, Ex. A-2 to Pl.'s Mot. for Summ. J., Corr. Lending Guide.

Information Inquiry" document for each loan.[41]  Plaintiff further offers a business report regarding the allocation of $15,037.71 in loan SRPs retained by Plaintiff to offset future outstanding amounts owed by Defendant.[42]

In response, Defendant offered evidence, in the form of an e-mail received by Defendant from Plaintiff, that Plaintiff's reserve of $15,037.71 was contemplated to be applied to amounts owing on Loans A, B, C, and two other loans not at issue in this lawsuit.[43] That evidence showed that on June 5, 2009, Defendant owed $22,179.12 to Plaintiff relative to those five loans.[44]  Defendant contends that this e-mail raises a fact issue about how the $15,037.71 reserve was applied to the outstanding billings and argues that the $15,037.71 reserve could have been applied to satisfy Loans A and B.

In rebuttal, Plaintiff provided a document dated June 9, 2009, showing that the $15,037.71 reserve was applied to fully satisfy the debt owing on the two larger loans and to partially offset the

---

[41]     See Doc. 30-1, Ex. A to Pl.'s Mot. for Summ. J., Cynthia O'Malley Decl., ¶¶ 6-7; Doc. 30-1, Ex. A to Pl.'s Mot. for Summ. J., Dem. Letter & Loan Info. Inquiries for Loans A & B.

[42]     See Doc. 48-1, Ex. A-16 to Pl.'s Supp. Mot. for Summ. J., Withheld SRPs Report.

[43]     Doc. 38-1, Ex. 1-A to Def.'s Supp. Resp. to Pl.'s Supp. Mot. for Summ. J., E-Mails Dated June 3-5, 2009.

[44]     Id.

amount owing on Loan C.[45]  The document showed that amounts owing by Defendant on Loans A and B remained outstanding after application of the reserve and are the amounts sought by this suit.[46]  Defendant did not provide any controverting documents in response.  As Plaintiff has showed that it is properly owed funds under the Agreement for Loans A and B, and Defendant has failed to raise a fact issue precluding summary judgment, Plaintiff's motion for summary judgment on Loans A and B, in the amount of $6,347.35 is **GRANTED.**

### 2.  Loans C and D

Plaintiff alleges that the respective borrowers of FHA Loans C and D failed to timely make their first three payments due to Plaintiff and that the defaults were not remedied within 120 days.[47]  As such, Loans C and D constitute EPDs and are governed by § 5.5 of the Agreement, which provided as follows:

> With respect to Loans underwritten by Correspondent [Defendant] under Correspondent's Chase approved delegated underwriting authority, or by Correspondent's agency approved delegated underwriter, and which Loans have not been underwritten by Chase prior to purchase, if such Loan is subject to a payment on default any of the first three (3) scheduled monthly payments due Chase and such default is not cured for one hundred and

---

[45]    Doc. 48-1, Ex. A-16 to Pl.'s Supp. Mot. for Summ. J., Withheld SRPs Report.  Declarant Cynthia O'Malley approved this application of the retained amount.  Doc. 48-1, Ex. A to Pl.'s Supp. Mot. for Summ. J., Cynthia O'Malley Decl., ¶ 5.

[46]    See 48-1, Ex. A-16 to Pl.'s Supp. Mot. for Summ. J., Withheld SRPs Report.

[47]    See Doc. 30-1, Ex. A to Pl.'s Mot. for Summ. J., Cynthia O'Malley Decl., ¶¶ 8-9.

17

> twenty (120) days following such default, then
> Correspondent shall: (a) pay Chase $2,500 for FHA or VA
> loans, or $1,000 for Conventional Loans, as
> reimbursement for administrative expenses; (b) return
> any servicing release premium paid to Correspondent in
> reference to such Loan; and (c) if the Loan is
> uninsured by HUD certificate, VA guaranty or private
> mortgage insurance, repurchase and reconvey the Loan in
> accordance with Sections 5.2 and 5.3 of this
> Agreement.[48]

Defendant does not contest that the loans are EPDs, but instead challenges the amounts claimed by Plaintiff as owing for each loan.

In support of its motion for summary judgment, Plaintiff offers evidence that, under § 5.5. of the Agreement, Defendant owes $794.06 for Loan C--"the amount of the SRP plus a $2500 penalty, less the amount of SRP previously applied by JPMC to Loan C."[49] As discussed above, the evidence submitted shows that a portion of the retained $15,037.71 was used to offset $3,103.53 owing on Loan C, leaving a balance of $794.06 on that loan.[50]

In response, Defendant offers the June 5, 2009 e-mail cited above in connection with Loans A and B and similarly argues that the $15,037.71 reserve should have been applied to completely offset the deficit amount on Loan C.[51] As discussed above in

---

[48]   See Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J., Corr. Orig. and Sales Agreement, Art. V, § 5.5.

[49]   Doc. 30-1, Ex. A to Pl.'s Mot. for Summ. J., Cynthia O'Malley Decl., ¶ 8.

[50]   Doc. 48-1, Ex. A-16 to Pl.'s Supp. Mot. for Summ. J., Withheld SRPs Rep.

[51]   See Doc. 38-1, Ex. 1-A to Def.'s Supp. Resp. to Pl.'s Supp. Mot. for Summ. J., E-Mails Dated June 3-5, 2009.

connection with Loans A and B, a portion of the $15,037.71 retainer was applied to Loan C, leaving a balance of $794.06.[52]  Defendant has failed to rebut this evidence.  The court therefore **GRANTS** summary judgment as to Loan C in the amount of $794.06.

Concerning Loan D, Plaintiff provided evidence that the amount owing on the SRP was $4,460.47 and that the additional default penalty under the Agreement was $2,500.00, for a total amount owing of $6,960.47.  In response, Defendant submitted the declaration of Alred, who stated that "According to Classic's records, after pricing adjustments, the amount actually paid to [Defendant] was only $3,318.53, and the amount [Plaintiff] seeks to recover on [Loan D] is inaccurate."[53]

In rebuttal, Plaintiff offered the Correspondent Advice Summary Report showing the SRP for Loan D to be $4,460.47, together with Alred's deposition in which she admitted that this report would be an appropriate source from which the SRP on any loan could be determined.[54]  Defendant thus failed to respond to Plaintiff's evidence or explain Alred's deposition testimony.  Accordingly, the court finds that in the absence of documentary evidence, Alred's

---

[52]     See Doc. 48-1, Ex. A-16 to Pl.'s Supp. Mot. for Summ. J., Withheld SRPs Report.

[53]     Doc. 38-1, Ex. 1 to Def.'s Resp. to Pl.'s Mot. for Summ. J., Mylena Alred Decl., ¶ 3.

[54]     See Doc. 48-2, Ex. B to Pl.'s Supp. Mot. for Summ. J., Mylena Alred Depo., p. 100.  When asked if Classic disputed the amount of the SRP on Loan D, Alred stated that she would have to pull her records, but that she "[did] not think so."  Id.

declaration is without adequate foundation and amounts to no more than an unsupported opinion.[55]  Summary judgment is **GRANTED** on Loan D in the amount of $6,960.47.

### 3.  Loan E

Under the Agreement, Defendant warranted that "all Conventional Loans are insurable by private mortgage insurers, when required, and an appropriate certificate or other evidence of such insurance will be issued by the insurer."[56]  Plaintiff alleges that Defendant breached this warranty when Loan E's borrower furnished false information on the loan application, resulting in the rescission of the mortgage insurance issued by PMI Mortgage Insurance Company ("PMI").

In support, Plaintiff cites a letter from PMI rescinding the mortgage insurance for Loan E and detailing the investigatory findings that resulted in the rescission.[57]  Based on this report, Plaintiff undertook its own review of Loan E and, concurring with the PMI report, concluded that the information provided by Defendant included misrepresentations by the borrower regarding her assets and employment as well as the correct value of the

---

[55]     The court will reconsider this ruling upon a timely filed motion for reconsideration that adequately documents the basis for Alred's belief that Plaintiff has miscalculated the SRP for Loan D.

[56]     See Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J.,  Corr. Orig. and Sales Agreement, Art. 4, § 4.2(D).

[57]     See Doc. 30-1, Ex. A-6 to Pl.'s Mot. for Summ. J., Letter & Rep. from PMI to Pl.

property.[58]

Defendant contends that PMI's report and Plaintiff's underwriting review regarding Loan E are inadmissible hearsay, and thus, Plaintiff cannot prove that Defendant violated the Agreement's warranties as to Loan E.  Regarding PMI's report, the court agrees that, if referenced to prove the truth of the matters therein, PMI's report constitutes hearsay not within a hearsay exception.  See Fed. R. Evid. 801(c)(2).  Here, however, PMI's report is considered not for the truth of the misrepresentation findings, but merely to show that Plaintiff received notice from PMI that there were misrepresentations of the borrower's assets and employment value of the property and, accordingly, undertook its own investigation into the truth of those matters.

Plaintiff's own underwriting review of Loan E is an admissible business record and may be considered by the court.  See Rule 803(6).  That review concluded that the borrower had misrepresented the origin of her down payment and the nature of her employment, making the loan uninsurable because it violated underwriting guidelines for such a loan.[59]  The review also concluded that the original appraisal on the property materially misrepresented the actual value of the property and, had this fact been known to PMI, it would not have agreed to insure the loan at a negative loan-to-

---

[58]  See Doc. 30-1, Ex. A-9 to Pl.'s Mot. for Summ. J., Pl.'s Underwriting Rev. of Loan E.

[59]  Id.

value ratio.[60]

The summary judgment burden then shifted to Defendant to establish that a genuine issue of material fact existed as to the existence of the required certificate of insurance on the property. Defendant does not dispute that there was no private mortgage insurance on the property as required by the Agreement but merely argues that the fact that one private mortgage insurer canceled the insurance does not support a conclusion that the loan was uninsurable.  However, at the summary judgment stage, such an argument is not persuasive.  Defendant failed to produce competent summary judgment evidence responding to Plaintiff's evidence of the loan lacked a certificate of insurance and was uninsurable based on the borrower's misrepresentations as well as a grossly inflated value of the property.  See Meinecke, 66 F.3d at 81.  Without more, Defendant's allegations--unsupported by competent summary judgment evidence or legal citations--do not create an issue of material fact.  See Brown, 337 F.3d at 541.

In light of this violation, Defendant was obligated, under § 5.1 of the Agreement, to repurchase Loan E after receiving written notice from Plaintiff and subsequently failing to remedy the breach within sixty days.[61] If the breach was incapable of being cured, Plaintiff could request that the Defendant repurchase the loan at

---

[60]     Id.

[61]     See Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J.,  Corr. Orig. and Sales Agreement, Art. 5, § 5.1.

the "Repurchase Price."[62]  The Agreement defined "Repurchase Price" as:

> The greater of par or the related Purchase Price Percentage, multiplied by the outstanding principal amount on the date of repurchase, plus: (i) accrued interest at the rate set forth under the Mortgage Note through the last day of the month in which such repurchase occurs; (ii) any and all costs and expenses, including reasonable attorney fees, incurred by [Plaintiff] to effect the repurchase; and (iii) any premium paid to [Defendant] for Servicing Rights; less (iv) any amounts actually recovered by [Plaintiff] from private mortgage insurance companies as of the date of repurchase.

Defendant argues that because the property was foreclosed, it was unable to repurchase the loan and, therefore, Plaintiff's only contractual recourse was via the Agreement's indemnity provision. That provision states:

> Defendant] hereby agrees to indemnify, save, and hold harmless [Plaintiff . . . ] from and against any and all losses, damages, fines, costs or expenses of any nature, [including loss of marketability and attorney's fees and costs, resulting from breach of any representation or warranty, covenant or agreement, made by [Defendant]. This indemnification shall survive any termination or cancellation of this Agreement.

Citing <u>Travelers Indem. Co. v. Dammann & Co., Inc.</u>, 592 F. Supp. 2d 752, 766-67 (D.N.J. 2008), Defendant argues that, under New Jersey law, an indemnification agreement must be based on the indemnitee's claim to recover for liability incurred to a third party.[63]  Because Plaintiff has not been found liable to a third

---

[62]    <u>Id.</u>

[63]    The Agreement provides that it is to be interpreted according to the Law of New Jersey.  <u>See</u> Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J., Agreement Sec. 7.8.  Because the court does not find this case to be instructive to the

party, Defendant claims that the indemnity provision of the Agreement was not triggered, and Plaintiff has no direct remedy against Defendant for indemnification.

Here, Plaintiff is seeking its own damages for Defendant's breaches of the Agreement's warranty provisions, not indemnification for liability owed to a third party. The Agreement provides that the repurchase remedies set forth in Article V are "in addition to and not to the exclusion of any and all rights and remedies available to [Plaintiff] at law or equity including specific performance."[64]   In the absence of a supported legal argument that Plaintiff waived all contractual remedies other than repurchase and contractual indemnity, the court proceeds to consider Plaintiff's claim for damages with respect to Loan E.

The summary judgment evidence established that on September 11, 2009, Plaintiff demanded $263,244.73 as a make-whole amount on Loan E.[65]   Specifically, this evidence showed that the principal balance owing on Loan E was $396,112.69, that unpaid interest totaled $18,584.74, and that Plaintiff incurred $19,760.16 in expenses and $16,630.05 in offsets.[66]   The property was sold for

---

present facts, it will not undertake the required conflicts of law analysis.

[64]   Id. at Sec. 5.6 Remedies not Exclusive.

[65]   Doc. 30-1, Ex. A-10 to Pl.'s Mot. for Summ. J., Make-Whole Letter for Loan E.

[66]   Id.

$160,325.07 and the SRP to be recovered was $3,742.26.[67]

Defendant has not rebutted this summary judgment evidence. The court finds that Plaintiff has produced sufficient summary judgment evidence to support its claim for damages in the amount of $263,244.73.

**4.  Loan F**

Regarding Loan F, Plaintiff alleges that Defendant breached warranties under §§ 4.2(L)(that information in loan file was correct) and 4.2(O)(that documents prepared by Defendant met certain guidelines) of the Agreement by furnishing false information of material facts.  Plaintiff also contends that Defendant breached § 4.2(C) of the Agreement because Loan F did not comply with Federal Home Loan Corporation's ("Freddie Mac") requirements as warranted by Defendant.

Here, Freddie Mac notified Plaintiff by letter that Loan F did not meet its guidelines because the borrower's assets, as represented in the loan file, falsely showed a Capital One bank account balance of $131,304, when the actual balance was $791.[68] Under Freddie Mac's guidelines, the borrower had to have at least $26,252.00 in available funds at the time of closing.[69]  Freddie Mac's notification of these misrepresentations instigated

---

[67]     Id.

[68]     Doc. 30-1, Ex. A-11 to Pl.'s Mot. for Summ. J., Repurchase Dem. and Rep. from Freddie Mac.

[69]     Id.

Plaintiff's own review of the supporting loan documents.[70]

Defendant objects to Freddie Mac's letter on hearsay grounds. The court agrees that Freddie Mac's documents may not be considered for the truth of the matters asserted therein. They may, however, be considered to show that, rightly or wrongly, Plaintiff was notified that Freddie Mac sought repurchase of the loan and, accordingly, Plaintiff commenced its own investigation into the truth of the allegations. The court will consider documents obtained during Plaintiff's investigation of Loan F, given that they satisfy the requirements of Rule 803(6).[71] Based on records obtained from Capital One, the borrower's bank, Plaintiff determined that the borrower had nowhere near the funds represented in his loan application, a violation of § 4.2(L)'s warranty that all information in the loan file was true, complete and accurate.[72]

In response, Defendant argues that "false or inaccurate information of documentation, if any, was provided by the borrower,

---

[70]   See Doc. 30-1, Ex. A-12 to Pl.'s Mot. for Summ. J., Pl.'s Underwriting Rev.

[71]   See Doc. 48-3, Ex. C to Pl.'s Supp. Mot. for Summ. J., Capital One Aff. and Recs.   The records of Capital One authenticated by a Capital One Services, LLC, employee meet the requirements of Rule 803(6).

[72]   The closing was September 10, 2008, according to Defendant. See Doc. 49, Def.'s Supp. Resp. to Pl.'s Supp. Mot. for Summ. J., p. 4.   The evidence showed that the borrower's balance on his Tower Gold Checking Account was $2,895.59 on March 4, 2008, $2,394.10 on April 2, 2008, $1,068.61 on May 2, 2008, $943 on June 3, 2008, $791.09 on July 2, 2008, $405.71 on August 4, 2008, and $330.70 on September 3, 2008.  See Doc. 48-3, Ex. C to Pl.'s Supp. Mot. for Summ. J., Capital One Aff. and Recs.   In contrast, the documents submitted by the borrower showed that on May 2, 2008, he had a balance of $131,244.10 and on June 3, 2008, he had a balance of $131,357.32.  See Doc. 49-2, Exs. 2A and 2B to Def.'s Supp. Resp. to Pl.'s Supp. Mot. for Summ. J.

26

not Classic."[73]   This distinction is unavailing.   Defendant contractually warranted that the documents it furnished to Plaintiff relating to Loan F--which included information regarding the borrower's assets--did not contain "any untrue statement of material fact."[74]

Defendant has failed to respond to Plaintiff's evidence with competent summary judgment evidence that the borrower's assets were not misrepresented.   Summary judgment as to Defendant's breach of §§ 4.2(L) and 4.2(O) of the Agreement for Loan F is therefore **GRANTED**.

Pursuant to §§ 5.2(D)(discovery of preexisting defects) and 5.2(E)(loan file containing any fraudulent documents), Plaintiff's recourse would be the immediate repurchase of Loan F by Defendant.[75] As with Loan E, however, the collateral for Loan F has since been sold and Plaintiff seeks a make-whole amount of $125,998.21.[76] Plaintiff supports this amount with summary judgment evidence showing that its principal loan balance was in the amount of $179,576.19, accrued interest was $33,122.56, expenses were $12,255.76, credits to be applied were $622.68 and the recaptured

---

[73]   See Doc. 38, Def.'s Resp. to Pl.'s Mot. for Summ. J., p. 13.

[74]   See Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J., Corr. Orig. and Sales Agreement, Art. 4, § 4.2(L).

[75]   See Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J.,  Corr. Orig. and Sales Agreement, Art. 4, § 4.2(D).

[76]   See Doc. 48-1, Ex. A-19 to Pl.'s Suppl. Mot. for Summ. J., Pl's. Make-Whole Quote for Loan F.

SRP was $1,955.58.[77]  The property sold for $102,430.[78]  Defendant has not rebutted this calculation with competent summary judgment evidence.  The court therefore **GRANTS** summary judgment on Loan F in the amount of $125,998.21.

    **5.  Loan G**

    In §§ 4.2(I), 4.2(S), and 4.2(X) of the Agreement, Defendant warranted that all real estate taxes were current and paid for Loan G prior to Plaintiff's purchase.  Plaintiff alleges that Defendant violated the warranties under these provisions by failing to pay a penalty of $440.00 for unpaid property taxes in 2009.[79]  As further evidence that Defendant was obligated to compensate Plaintiff for the assessed tax penalty, Plaintiff offered a letter sent to Defendant requesting compensation in the amount of $440.00 for Loan G.[80]

    Defendant, however, directs the court's attention to the delivery address of Plaintiff's request for compensation.[81]  The letter was addressed to Defendant at 1700 Main Street, 4B in

---

[77]    Id.

[78]    Id.

[79]    See Doc. 30-1, Ex. A to Pl.'s Mot. for Summ. J., Cynthia O'Malley Decl., ¶ 18.

[80]    See Doc. 30-1, Ex. A-14 to Pl.'s Mot. for Summ. J., Dem. Letter for Loan G.

[81]    See Doc. 38-1, Ex. 1 to Def.'s Resp. to Pl.'s Mot. for Summ. J., Mylena Evans Decl., ¶ 4; Doc. 30-1, Ex. A-14 to Pl.'s Mot. for Summ. J., Dem. Letter for Loan G.

Houston, Texas.[82]   Defendant has proffered competent summary judgment evidence that it does not have an office at that address and therefore did not receive Plaintiff's demand letter.[83]   The Agreement required Plaintiff to provide Defendant with written notice of any alleged breach of § 4.2, after which time Defendant had sixty days to cure the breach to Plaintiff's satisfaction.[84] Such written notice must have been delivered personally, electronically, or by certified mail to Defendant.[85]

The court finds that a question of fact exists regarding whether Plaintiff performed its duty under the Agreement to provide Defendant with written notice of a breach in light of the incorrect recipient address of Plaintiff's demand letter.   Summary judgment for Loan G is therefore **DENIED**.

## C.  <u>Attorneys' Fees</u>

As there remains a pending claim in this case, determination of attorneys' fees at this stage is inappropriate.   The court thus **DENIES** summary judgment as to Plaintiff's claim for attorneys' fees at this time.

---

[82]   <u>See</u> Doc. 30-1, Ex. A-14 to Pl.'s Mot. for Summ. J., Dem. Letter for Loan G.

[83]   <u>See</u> Doc. 38-1, Ex. 1 to Def.'s Resp. to Pl.'s Mot. for Summ. J., Mylena Alred Decl., ¶ 4.

[84]   <u>See</u> Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J., Corr. Orig. and Sales Agreement, Art. V, § 5.1 (governing remedies for Defendant's breach of representation of warranty).

[85]   <u>See</u> Doc. 30-1, Ex. A-1 to Pl.'s Mot. for Summ. J., Corr. Orig. and Sales Agreement, Art. VII, § 7.5 (describing the type of notice required under the Agreement).

## V.   Conclusion

Based on the foregoing, the court; **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motions for summary judgment and **GRANTS, IN PART,** Plaintiff's motion to strike.

**SIGNED** in Houston, Texas, this 23rd  day of January, 2012.

_____
Nancy K. Johnson
United States Magistrate Judge